## CLAUDE (BLACKIE) HAGER v. STATE.

No. A-7354. Opinion Filed April 5, 1930.
Rehearing Denied April 19, 1930.
(286 Pac. 815.)

Frank Nesbitt, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

EDWARDS, P. J. The plaintiff in error, hereinafter called defendant, was convicted in the district court of Ottawa county on a charge of murder and his punishment fixed at death.

The record discloses a state of facts about as follows: Walter Harp, the deceased, and Mrs. Ethel Harp, his sister-in-law, some time prior to the homicide returned from Colorado to Oklahoma, and defendant rode with them in the car which belonged to deceased. On the day of the homicide, Harp, Mrs. Harp, defendant, and Elmer Moore went on a fishing trip. They arrived at the stream where they were to fish about 6 o'clock in the afternoon, and between 8 and 9 they started to return to Picher where they were staying. Defendant and Moore were riding in the back seat and Harp was driving and Mrs. Harp in the front seat with him. When they had passed a place referred to as the Buffalo schoolhouse, Mrs. Harp was struck on the head and became unconscious and knew nothing further until she regained consciousness the next day in a hospital at Miami. The evidence further discloses that at the time Mrs. Harp was struck on the head Walter Harp was also struck on the head, and the bodies of the two were dragged into a cornfield adjoining the highway. The body of Harp was found there early the next morning, the skull fractured, and other wounds about the head,

with considerable blood on the ground and marks showing where the bodies had been dragged over a ditch along the side of the road into a cornfield, a distance of about one hundred and twenty feet. Mrs. Harp testified that on this trip she had $200 in bills, a sapphire and a diamond ring in her purse. Defendant was arrested some time later at the home of his brother near Paris, Tex. He had at the time the automobile which had belonged to deceased and the two rings of Mrs. Harp. He stated at the time that the rings were delivered to him by Moore, who had taken them out of Mrs. Harp's pocketbook, and that he and Moore had driven the car there. Both defendant and Moore made written statements soon after their arrest. Elmer Moore, the accomplice, testified for the state. His testimony, in substance, is that defendant proposed to him that they kill Harp and Mrs. Harp and get the car. That defendant put a hammer in his pocket and Moore had a wrench at his feet in the back seat, and that at a certain point defendant gave him a signal and immediately struck Harp with the hammer, and Harp immediately attempted to get out of the car, and defendant again struck him with the hammer and he fell in the ditch, and that witness struck Harp one lick with the wrench and also struck Mrs. Harp, and the bodies were then dragged into the cornfield. That her pocketbook was in the car, and they went through it and got the money and the rings. That they changed the license on the car and attempted to sell the rings. Moore pleaded guilty to the murder and was sentenced to life imprisonment.

The assignments of error challenge the sufficiency of the evidence and the sufficiency of the corroboration of the accomplice. There is no merit whatever in the claim that the evidence is insufficient or that the accomplice is not corroborated. The evidence is practically un-

disputed, and there is an abundance of corroboration of the accomplice, including the admissions and statements of the defendant himself.

The further claim is made that the county attorney and the special prosecutor assisting the county attorney were guilty of prejudicial misconduct. This assignment is directed at two questions, one propounded by Mr. Thomas, special counsel, and one by the county attorney in which Moore, the accomplice, was asked if defendant at any previous time had made a proposition or tried to get him to commit any other offense. In both instances objections were made and sustained, the court in one instance stating that the question was highly objectionable. These questions were improper, and we do not understand how either the county attorney or special counsel could have thought them competent unless they had some connection or threw some light on the offense charged. The form of the questions does not indicate any connection. When these questions were asked and the objection to them sustained, the point was not pursued further and no motion to withdraw the questions nor request to the court to instruct the jury not to consider them was made. The mere questions as they appear, it seems to us, could not have been prejudicial, particularly in the light of the evidence in the case.

Defendant further earnestly insists that the penalty is excessive and should be modified by this court to life imprisonment, since it is shown that the accomplice on his plea of guilty was sentenced to life imprisonment. The undisputed evidence discloses the most vicious murder of Harp under circumstances of extreme brutality, and incidentally a murderous attack on Mrs. Harp for the purpose of obtaining the small amount of property they possessed.

Capital punishment should be inflicted only in extreme cases, where an accused commits a crime for which the death penalty may be assessed and where there are no circumstances of mitigation or extenuation. This case falls in that class of cases. Where justice requires, this court may modify the judgment by reducing from death to life imprisonment. We see nothing in this case requiring the exercise of that power. The fact that the accomplice Moore was upon his plea of guilty sentenced to life imprisonment does not affect the case as to this defendant. The record discloses that Moore was a youth of twenty years, the defendant a mature man of forty-one, and that the accomplice entered his plea of guilty and testified for the state. The court, no doubt considering his age and all the circumstances and the comparative responsibility of the parties, exercised his discretion and assessed the punishment at life imprisonment. This presents no legal reason why this court should interfere with the judgment and sentence imposed.

The judgment is affirmed.

It is further ordered by this court that the warden of the penitentiary proceed to carry into execution the judgment of the district court of Ottawa county in this case, and the 6th day of June, 1930, is fixed as the date for executing the sentence pronounced.

DAVENPORT and CHAPPELL, JJ., concur.